*In re* LIQUIDATION OF CORONET INSURANCE COMPANY *et al.* (The People of the State of Illinois *ex rel.* Mark Boozell, Director of Insurance, as Liquidator of Coronet Insurance Company, Plaintiff-Appellant, v. Coronet Insurance Company *et al.*, Defendants (Illinois Insurance Guaranty Fund, Intervenor-Appellant; David Kreisman and Associates, Claimant-Appellee)).

First District (5th Division)   Nos. 1—97—2332, 1—97—2523 cons.

Opinion filed July 24, 1998.

Glenn Seiden & Michael H. Walsh, both of David Kreisman & Associates, of Chicago, for appellees.

Peter G. Gallanis and Dale A. Coonrod, and James R. Stinson, William M. Sneed, Ellen S. Robbins, and Erin E. Kelly, all of Sidley & Austin, all of Chicago, for appellant Mark Boozell.

R.R. McMahan, Rowe W. Snider, and Brian T. Garelli, all of Lord, Bissell & Brook, of Chicago, for appellant Illinois Insurance Guaranty Fund.

Joseph C. Tanski, of Hutchins, Wheeler & Dittmar, of Boston, Massachusetts, for *amicus curiae*.

JUSTICE HOURIHANE delivered the opinion of the court:

Plaintiff People of the State of Illinois *ex rel.* Mark Boozell, Director of Insurance for the State of Illinois, and intervenor Illinois Insurance Guaranty Fund appeal from an order of the circuit court adjudging David Kreisman & Associates (DKA) a first-priority administrative claimant under section 205 of the Illinois Insurance Code (215 ILCS 5/205 (West 1996)). Together, plaintiff, intervenor and *amicus curiae* National Conference of Insurance Guaranty Funds raise several contentions on appeal. For the reasons that follow, we reverse and remand.

## BACKGROUND

On December 10, 1996, plaintiff filed a verified complaint for conservation of assets and injunctive relief against defendant Coronet Insurance Company. Shortly thereafter, an agreed order was entered adjudging Coronet insolvent and placing same under the control and direction of plaintiff for purposes of liquidation.

DKA was later notified by plaintiff that its association with Coronet, as one of its attorneys, was concluded as of December 24, 1996, and that all Coronet litigation files in its possession must be returned. DKA resisted, arguing that because it was owed attorney fees and costs from Coronet, a common law retaining lien attached to those files, thus permitting it to continue in possession thereof until paid. Plaintiff objected, whereupon DKA petitioned the circuit court for "a deposit or security in lieu of the firm's retaining lien for fees and costs owed." Following a hearing, the circuit court entered an order requiring DKA to release its Coronet litigation files to plaintiff, without prejudice to its assertion of a common law retaining lien. The matter then proceeded to a hearing on the ability of DKA to assert a common law retaining lien.

In support of such a lien, DKA argued that pursuant to *In re Liquidation of Prestige Casualty Co.*, 276 Ill. App. 3d 698, 659 N.E.2d 50 (1995), and *In re Liquidation of Mile Square Health Plan*, 218 Ill. App. 3d 674, 578 N.E.2d 1075 (1991), its common law retaining lien was well taken and that subsequent amendments to certain sections of the Insurance Code "did not expressly or impliedly overrule" that authority.

Plaintiff responded in opposition, arguing that to require the posting of security, as requested, would be the equivalent of allowing DKA to obtain the priority of a secured creditor *after* the filing of the complaint for conservation. Such a result, according to plaintiff, would contravene the explicit distribution priorities set forth within section 205(b) of the Insurance Code, which assigns such preferred priority only to those claims "that are secured by liens perfected *prior* to the filing of the complaint." (Emphasis added.) 215 ILCS 5/205(1)(b) (West 1996).

Plaintiff further argued that the plain language of amended sections 189 and 191 of the Insurance Code (215 ILCS 5/189, 191 (West 1996)) preclude common law retaining liens and, thus, overrule *In re Liquidation of Prestige Casualty Co.* and *In re Liquidation of Mile Square Health Plan* insofar as each affirms the continued viability of common law retaining liens in liquidation actions.

Finally, plaintiff argued that public policy considerations militate against the allowance of such liens in that requiring the posting of

such security "could soon render the estate unable to pay more deserving creditors under the statutory priority scheme, namely the insureds."

On April 7, 1997, after entertaining arguments from counsel, the circuit court held that DKA was entitled to assert a common law retaining lien against the Coronet estate. The circuit court further adjudged DKA a secured creditor of the Coronet estate. Also scheduled at that time was another hearing, wherein the circuit court would assess the value of the aforementioned secured claim.

Plaintiff duly moved for reconsideration. Plaintiff also argued that resolution of the aforementioned lien required more than simply conducting a hearing thereon. According to plaintiff, section 209 of the Insurance Code (215 ILCS 5/209 (West 1996)) sets forth "a comprehensive set of procedures respecting the filing and determination of claims against an insolvent insurer," procedures wholly ignored by both DKA and the circuit court.

Prior to the entry of a final order, intervenor was granted leave to join the underlying litigation. It also moved the circuit court to reconsider its adjudication of DKA as a second-priority secured creditor. Intervenor argued that a common law retaining lien "is a possessory lien that merely gives the attorney a right to retain the litigation files in his or her possession" and, therefore, the holder of such cannot be deemed a secured creditor. It further argued that the circuit court was without authority to rely upon general equitable principles to alter the specific distribution priorities set forth within section 205 of the Insurance Code. Like plaintiff, intervenor maintained that *In re Liquidation of Prestige Casualty Co.* and *In re Liquidation of Mile Square Health Plan* had been overruled by the amendments to sections 189 and 191 of the Insurance Code insofar as the former affirmed the continued viability of common law retaining liens in liquidation actions.

A hearing was held on May 20, 1997. Therein, the circuit court assessed DKA's secured claim at $73,677.10. The circuit court further adjudged DKA a first-priority administrative claimant and, therefore, immediately payable.

## DISCUSSION

### I

Plaintiff, intervenor and *amicus curiae* raise several contentions regarding the effect of certain amendments to the Insurance Code, the most important of which concern the continued viability of common law retaining liens in liquidation actions. Specifically, each contends that sections 189 and 191 of the Insurance Code, as amended, abolished the common law retaining lien in liquidation actions.

■ The primary purpose of statutory construction is to ascertain and effectuate the intention of the legislature, the most reliable indication of which is the very language employed. *In re S.G.*, 175 Ill. 2d 471, 480, 677 N.E.2d 920 (1997); *People v. Woodard*, 175 Ill. 2d 435, 443, 677 N.E.2d 935 (1997). To that end, words are to be given their plain and ordinary meaning and each provision considered in light of all others. *Barnett v. Zion Park District*, 171 Ill. 2d 378, 389, 665 N.E.2d 808 (1996). Indeed, different provisions of the same amendatory act must be read so as to harmonize and give effect to each, if possible. See *People ex rel. Funk v. Hagist*, 401 Ill. 536, 541, 82 N.E.2d 621 (1948); *People ex rel. Little v. Peoria & Eastern Ry. Co.*, 383 Ill. 79, 88, 48 N.E.2d 407 (1943); *People ex rel. Vuagniaux v. City of Edwardsville*, 284 Ill. App. 3d 407, 413, 672 N.E.2d 40 (1996). Likewise, a construction that does not give effect to a certain provision or that tends to promote inconsistency among provisions is to be avoided. *In re Marriage of Lasky*, 176 Ill. 2d 75, 89-90, 678 N.E.2d 1035 (1997).

■ A common law retaining lien is a possessory lien in favor of an attorney for unpaid fees and "exists on all papers or documents of the client placed in the attorney's hands in his professional character or in the course of his professional employment." *Sanders v. Seelye*, 128 Ill. 631, 637-38, 21 N.E. 601 (1889). Such a lien allows an attorney to retain possession of a client's files until such time as his fees are paid or adequate security posted. *In re Liquidation of Mile Square Health Plan*, 218 Ill. App. 3d at 677-78; *Upgrade Corp. v. Michigan Carton Co.*, 87 Ill. App. 3d 662, 664, 410 N.E.2d 159 (1980).

■ In 1991, this court held that common law retaining liens were well taken in liquidation actions under the Insurance Code. *In re Liquidation of Mile Square Health Plan*, 218 Ill. App. 3d at 681. In 1995, however, several sections of the Insurance Code were amended, including sections 189 and 191. Pub. Act 89—206, eff. July 21, 1995. Section 191, as amended, provides as follows:

> "The Director and his successor and successors in office shall be vested by operation of law with the title to all property, contracts, and rights of action of the company as of the date of the order directing rehabilitation or liquidation. *The Director is entitled to immediate possession and control of all property, contracts, and rights of action of the company, and is further authorized and directed to remove any and all records and property of the company to the Director's possession and control or to such other place as may be convenient for the purposes of efficient and orderly administration of the rehabilitation or liquidation. All persons, companies, and entities shall immediately release their possession and control of any and all property, contracts, and rights of action*

*of the company to the Director including, but not limited to, bank accounts and bank records, premium and related records, and claim, underwriting, accounting, and litigation files.* The entry of an order of rehabilitation or liquidation creates an estate that comprises all of the liabilities and assets of the company. The filing or recording of such order in the office of the recorder or the Registrar of Titles in any county of this State shall impart the same notice that a deed, bill of sale or other evidence of title duly filed for record by such company would have imparted." (Emphasis added.) 215 ILCS 5/191 (West 1996).

Amended section 191 vests title to all property of an insolvent insurer in the Director of Insurance, by operation of law, upon the entry of an order directing rehabilitation or liquidation. 215 ILCS 5/191 (West 1996). It also requires the immediate release of all property belonging to an insolvent insurer to the Director of Insurance, including litigation files. 215 ILCS 5/191 (West 1996). Those provisions are mandatory and admit of no exception. As should be obvious, the practical effect of those provisions is the elimination of the right to retain the property of an insolvent insurer. Indeed, if one is under a duty to immediately release certain property, *ipso facto*, there is no right to retain that property, and if there is no right to retain that property, there is no basis upon which to assert a common law retaining lien. In short, the mandatory duty announced within amended section 191 abolished the right to assert a common law retaining lien against an insolvent insurer in a liquidation action under the Insurance Code.

That section 189 of the Insurance Code was also amended in 1995 to provide that a circuit court *"may* issue such other injunctions or enter such other orders as may be deemed necessary to prevent waste of assets or the obtaining, asserting, or enforcing of preferences, judgments, attachments, or other like liens, including common law retaining liens, or the making of any levy against [an insolvent insurer] or its property and assets while in the possession and control of the Director" (emphasis added) (215 ILCS 5/189 (West 1996)), does not alter or otherwise negate the plain meaning of section 191. Indeed, the provisions of section 189 are entirely consonant with those of section 191; that is to say, the former serve as the means by which a circuit court may enforce the mandatory duty announced within section 191, when necessary. Accordingly, to construe the provisions of section 189 as allowing the continued assertion of common law retaining liens against insolvent insurers in liquidation proceedings, as DKA implicitly does, simply ignores the manifest purpose of that section. Moreover, such a construction effectively emasculates the clear and unambiguous mandate enacted within section 191.

To be clear, section 189 vests a circuit court with the authority and means to *protect* the property of an insolvent insurer against dissipation and other forms of compromise, including the assertion of a common law retaining lien, during liquidation proceedings. It does not vest a circuit court with the authority or means to do otherwise; that is to say, section 189 does not provide a circuit court with the authority or means to allow the assertion of a common law retaining lien against an insolvent insurer in liquidation proceedings under the Insurance Code. As such, the circuit court exceeded its authority in allowing DKA to assert a common law retaining lien against the Coronet estate.

## II

Plaintiff, intervenor and *amicus curiae* also contend that in adjudging DKA a second-priority secured creditor and, later, a first-priority administrative claimant, the circuit court ignored the specific distribution provisions set forth within section 205 of the Insurance Code.

■ Section 205 of the Insurance Code prioritizes the various claims brought against an insolvent insurer's estate for purposes of distribution. First and foremost are administrative claims. 215 ILCS 5/205(1)(a) (West 1996). Second are secured claims. 215 ILCS 5/205(1)(b) (West 1996). Fourth are "[c]laims by policyholders, beneficiaries, insureds and liability claims against insureds covered under insurance policies and insurance contracts issued by the company." 215 ILCS 205(1)(d) (West 1996). Seventh are claims of general creditors. 215 ILCS 5/205(1)(g) (West 1996). DKA was a general creditor. See *People ex rel. Schacht v. Prestige Casualty Co.*, 287 Ill. App. 3d 577, 580, 678 N.E.2d 785 (1997).

■ In a liquidation action, a circuit court is vested with only as much authority as is provided by the Insurance Code; equitable remedies in contradiction to those plainly set forth within the Insurance Code are therefore precluded. *In re Liquidation of Security Casualty Co.*, 127 Ill. 2d 434, 447-48, 537 N.E.2d 775 (1989); *People ex rel. Palmer v. Peoria Life Insurance Co.*, 357 Ill. 486, 490-91, 192 N.E. 420 (1934); *People ex rel. Palmer v. Central Mutual Insurance Co.*, 313 Ill. App. 84, 95-96, 39 N.E.2d 400 (1942).

Here, the circuit court ignored the provisions of section 205 and, pursuant to its equitable powers, adjudged DKA a second-priority secured creditor and, later, a first-priority administrative claimant. That, too, was error.

## III

■ Plaintiff, intervenor and *amicus curiae* further contend that the circuit court committed certain other procedural errors, to wit,

determining the value of DKA's claim through means other than the proof of claim procedures set forth within the Insurance Code, failing to assess the value of that aforementioned claim to the Coronet estate and requiring that DKA be paid prior to the claim bar date.

Section 208 of the Insurance Code (215 ILCS 5/208 (West 1996)) requires that "all persons who may have claims against [an insolvent] insurer shall present the same to the Liquidator, Rehabilitator or Conservator, as the case may be, at a place specified in the notice for filing claims within such time as may be fixed by order of the Court." Section 209 sets forth the procedures by which such proofs of claim are administered. 215 ILCS 5/209 (West 1996). A hearing before a circuit court is not among those procedures. The circuit court erred in ignoring the provisions of sections 208 and 209.

So, too, did the circuit court err in ordering plaintiff to pay DKA prior to the claim bar date. Section 210 of the Insurance Code (215 ILCS 5/210(1) (West 1996)) permits distribution of an insolvent insurer's estate only *"after* the last day fixed for the filing of proof of claims."* (Emphasis added.) Here, the claim bar date was December 24, 1997. Accordingly, ordering plaintiff, on May 20, 1997, to pay DKA was in violation of section 210 and therefore improper.

## IV

■ Plaintiff, intervenor and *amicus curiae* lastly contend that the circuit court's reliance upon its own notions of equity jeopardized the orderly and efficient administration of the underlying liquidation as well as the interests of all beneficiaries to the Coronet estate. Indeed, according to plaintiff, intervenor and *amicus curiae*, elevation of DKA from seventh-priority general creditor to first-priority administrative claimant, served only to increase the possibility that more deserving claimants will receive less upon liquidation.

The various orders of the circuit court do not comport with the underlying purpose of article XIII of the Insurance Code (215 ILCS 5/187 *et seq.* (West 1996)), which is the "protect[ion] [of] individual policyholders and other claimants without permitting certain classes of creditors to place themselves in a superior position." *Lincoln Tower Insurance Agency, Inc. v. Boozell*, 291 Ill. App. 3d 965, 970, 684 N.E.2d 900 (1997). In fact, those orders, which, together, served to elevate DKA to a first-priority claimant, are in opposition to such purpose and therefore improper.

## CONCLUSION

For the aforementioned reasons, the April 7, 1997, and May 20,

1997, orders of the circuit court are reversed, and this matter remanded for proceedings not inconsistent with this opinion.

Reversed and remanded.

HOFFMAN, P.J., and THEIS, J., concur.